UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ARTHUR D'AMARIO, III :
: CA 06 131T
v. : C.A. No. 06-
:
UNITED STATES :

PETITION FOR A WRIT OF ERROR CORAM NOBIS

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), Arthur D'Amario hereby petitions the court for issuance of a writ of error coram nobis reversing his illegal conviction in USA v. D'AMARIO, No. CR 99-024 (D.R.I.), as mandated by art. 1, §§ 2 and 5 of the R.I. Constitution.

Procedural History

1. On Feb. 8, 1999, Petitioner's Smithfield apartment was unlawfully raided, rummaged and ransacked by marauding policemen from Attleboro, MA, and Smithfield, RI, upon execution of a joke search warrant procured from Judge DeRobbio whose application falsely accused Petitioner of offenses under MGL c. 209A. A seized firearm legally purchased in 1987 led to a federal indictment on March 3, 1999. A Franks hearing to examine the warrant's validity occurred Oct. 21, 1999, and the motion to suppress was denied Nov. 3, 1999. A jury returned a verdict of guilty of one count under 18 U.S.C. § 922(g)(1) on Dec. 22, 1999. On March 10, 2000, Judge DiClerico sentenced Petitioner to "18" months imprisonment plus 3 years supervised release. A direct appeal was summarily denied, without assigned counsel, on Feb. 12, 2001 (No. 00-1466) (2 Fed.Appx. 25).

2. A § 2255 petition was submitted in March 2001 (No. 01-cv-0097T), but wrongly assigned to Judge DiClerico who was then assisting Newark, NJ, prosecutors in the preparation of another indictment against Petitioner which would identify the judge as his "crime victim" and a material witness against him.

3. Concealing his conflict of interest, Judge DiClerico departed from normal procedure, summarily denied the § 2255 petition on May 17, 2001 due to bias, and denied a Certificate of Appealability, which precluded First Circuit review. The Judgment dismissing No. 01-cv-0097T is null and void as a result of Judge DiClerico's disobedience of 28 U.S.C. § 455(a).

4. Petitioner has learned that both Judge DiClerico and the First Circuit, from 1999-2001, willingly received prejudicial and libelous information concerning Petitioner from extra-judicial sources including CUSPO Barry J. Weiner, Clerk David DiMarzio, and executives of Motorola, Inc., of Mansfield, MA, who are close acquaintances of the judges and c. 209A plaintiff Debra Sellers. Those ex parte communications were never disclosed to the defense and deprived Petitioner of fundamental fairness at every level. Debra's husband, Matthew, has boasted that the case was "fixed." Debra has told Petitioner that Motorola "fixed" this case. She is employed there and comes from a wealthy, influential Mob family.

5. The claims pleaded below could not be raised on direct appeal because (a) attorney Ed Roy rendered ineffective assistance and failed to raise valid theories or to establish facts; (b) the ACI destroyed Petitioner's notes, files and legal papers two weeks before trial; (c) the Marshals delayed serving a subpoena on his trial witness, Sharon Turner, until a week after the jury verdict; (d) new law emerging subsequent to trial, such as recognition of the "innocent possession" defense, did not exist or was not clear in 1999; and (e) police tendered misrepresentations, falsified records, and suppressed exculpatory evidence, to throw off Ed Roy's feeble attempt at a defense. The government's conduct was outrageous.

6. Petitioner is barred from filing a second or successive § 2255 motion, so that statute is unavailable. He cannot invoke § 2241 for he is not confined in the sentencing district, and is relying on provisions of the RI State Constitution that cannot be enforced in a traditional federal habeas corpus proceeding.

7. The errors complained of herein are of a type that would have justified relief during the term of imprisonment. The conviction produced lingering and still extant collateral civil disabilities. For instance, miscomputation of Petitioner's jail credit by BOP has caused him to be ordered for more supervised release, even though his sentence legally expired long ago.

8. Petitioner's sentence legally expired June 9, 2000, and he remains incarcerated without justification as a political prisoner, due to the Sellers's family's ability to exert influence on the judicial branch. If his term is properly computed, he is no longer in custody on this sentence. Moreover, §§ 2255 and 2241 are inadequate and unavailable.

9. Petitioner's ex-lawyers, Ed Roy and David DiCola, deprived him of his right to counsel in the RI and MA proceedings when they yielded to Motorola's pressure to make him the patsy for crimes committed by Debra Sellers, Lt. Bussiere and Sgt. Collins. Ed Roy concealed a double agency in which he misrepresented Petitioner while simultaneously advising the State Police who participated in his frame-up.

# CLAIMS

## I. ILLEGAL SEARCH & SEIZURE:

10. In his 2/8/99 warrant application, Sgt. Collins lied that I was phoning, writing, visiting and contacting or harassing Debra Sellers. No such contact ever occurred, and at a civil hearing in Attleboro 2/4/99, Sellers recanted under oath. Collins also lied that I was convicted of "restraining order violations" in Attleboro 12/11/98, which is untrue.

11. Sgt. Collins lied to fabricate probable cause for a warrant by accusing me of writing crank letters to Sellers in Oct. '98 and Jan. '99. The truth is that Collins and Bussiere typed those anonymous greeting cards themselves to frame me in retaliation for being served summonses in D'AMARIO v. DuFORT, C.A. No. 98-11331-MEL (D.Mass.). They approached Sellers in August '98 and enlisted her cooperation in the hoax. Collins committed perjury at the Oct. 21, 1999, Franks hearing.

12. Sgt. Collins lied in his application that Middleboro State Police had tested the cards for fingerprints and found none. In 2003, the MA Supervisor of Records investigated and reported that the cards were never analyzed for fingerprints and that Collins had falsified his 1/17/99 Incident Report to obstruct Ed Roy's lame pretrial investigation. The cards match the typeset used by Lt. Bussiere in late 1998, and contain the fingerprints of Sellers, Collins, Bussiere and Sellers' mother.

13. Once inside the apartment, Collins abused the warrant by a general rummaging intended to intimidate and harass Petitioner. He had to open a bedroom dresser, move a pile of clothing, and open a box to find the firearm - facts not developed by Ed Roy on Oct. 21, 1999. Had these facts been established, Petitioner would be on equal standing with the defendant in USA v. PARADIS, 351 F.3d 21, 30-32 (1st Cir. 2003) (firearm hidden under pile of clothes in felon's bedroom and seized without a warrant was not in plain view and was inadmissible).

14. There was no probable cause to suspect Petitioner of a crime committed by the executing officers. The raid violated the search-and-seizure protections of the RI Constitution, which affords greater protection than its federal counterpart.

## II. ALAN T. ROBILLARD IS A FRAUD:

15. Ex-FBI document expert Alan Robillard suffered an inherent conflict of interest by virtue of his employment with DA Paul F. Walsh, Jr., who is in the Sellers's pocket and who participated in this frame-up. Robillard deliberately misinformed the court that he'd need Petitioner's typewriter to rule him out as a suspect. Robillard concealed exculpatory facts

from his 2/26/99 report, such as failing to identify the brand of machine that produce the cards so that Bussiere could not be implicated.

16. Collins and Robillard lied that there was confusion as to how the cards were produced, when they always knew with certainty that they came from a typewriter and that the typeset was clearly dissimilar from Petitioner's.

17. Ed Roy rendered ineffective assistance by relying on the conflicted Robillard and not seeking an expert opinion from a neutral document expert. In 2003, I retained such an expert in North Carolina who can link the cards to Lt. Bussiere.

III. PETITIONER HAS A RIGHT TO DNA TESTING:

18. Subsequent to verdict, courts and the RI legislature have decreed that when DNA evidence is in the state's custody, and the prisoner went to trial on a plea of not guilty, the DNA must be analyzed to determine conclusively who is the culprit.

19. In his report of 2/26/99, Robillard stated that the author of the cards licked the stamps and left DNA beneath them that should be tested. Petitioner has a sample of Lt. Bussiere's DNA on a January '99 summons he mailed to Petitioner upon which Bussiere licked the stamp.

20. Attleboro police have preserved the cards. Testing of the DNA will exonerate Petitioner and inculpate Bussiere.

IV. THE FAIR WARNING DOCTRINE BARRED PROSECUTION:

21. As a nonviolent felon in 1999, Petitioner maintained the right under RI law to possess in his dwelling, without a license or permit, any and all legally sold firearms, even while serving state probation. See RIGL §§ 11-47-2(2) (describing disabling crimes of violence); 11-47-5 (nonviolent felons may own guns); and 11-47-8 (no permit necessary if kept in home).

22. Because of these statutes, upon his RI felony plea on 10/8/96, neither the prison, court nor probation informed Petitioner that he must not rely on misleading laws and that he is subject to prosecution notwithstanding state law. The jury would have acquitted him had it known of this conflict of confusing law.

23. This defense couldn't be raised in 1999 because USMS delayed serving a subpoena on RI Probation Officer Sharon Turner, because Petitioner's notes were destroyed by ACI, and because Ed Roy failed to fully comprehend it and thus abandoned his motion to dismiss the indictment that was planned for April '99. State law is oblivious to 18 U.S.C. § 922(g)(1) and provides bad advice.

V. "INNOCENT POSSESSION" OFFERS A NEW DEFENSE:

24. Since trial appellate courts have recognized a defense of "innocent possession" which applies to Petitioner. See, e.g., U.S. v. HERRON, 432 F.3d 1127, 1135 (10th Cir. 2005), and U.S. v. MASON, 233 F.3d 619 (D.C. Cir. 2000). His firearm was obtained innocently and held with no illicit purpose and, possession was transitory at the time of the federal offense as he was trying to sell it for $25 at a police buyback program even though he thought it was legal under state law.

25. It is a fact that Petitioner's possession of the firearm was greatly extended into 1999 due solely to threats made against him by Sgt. Collins and Matthew and Debra Sellers, who all knew since 1996 that he owned the handgun. Petitioner was aware from 1996-99 that police and the Sellers's were concocting phony civil and criminal cases against him in Attleboro to try to catch him with the gun on his person or in his car while they executed a bogus arrest warrant or served a MGL c. 209A order. These true facts placed him under such duress that he could not risk taking the firearm out of his dwelling and being exposed to multiple felony prosecutions if no one believed his explanation. Police lies and frame-ups interferred with the transitory portion of the "innocent possession" defense.

26. Had the jury been instructed on innocent possession, then upon these provable facts Petitioner would have been acquitted.

WHEREFORE, Petitioner demands Judgment as follows:

A. That this court reverse his conviction;
B. That this court award him reasonable attorney fees, if any, and costs of suit incurred;
C. That this court grant such other and further relief as it may deem meet and just.

I declare under penalty of perjury that the foregoing is true.

PETITIONER, pro se,

Executed on: March 13, 2006.

[signature]

Arthur D'Amario 02989070
Federal Detention Center
PO Box 562
Philadelphia, PA 19105